IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JOSEPH DOORNBOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 13 CV 6021 |
| ) | |
| The CITY OF CHICAGO, et al., ) | Judge THARP |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Plaintiff Joseph Doornbos respectfully requests that this Court enter a judgment as a matter of law on his Fourth Amendment claim because Defendant Officer Williamson's frisk of Doornbos was unlawful. Plaintiff submits the following memorandum in support of this motion:

**INTRODUCTION**

The Seventh Circuit has already ruled that Defendant Chicago Police Officer Michael Williamson's frisk of Plaintiff Joseph Doornbos outside the Wilson Avenue CTA train station on February 15, 2013 was unlawful and violated the Fourth Amendment. A jury cannot now return a verdict in favor of Williamson on Doornbos's Fourth Amendment claim because the frisk (or attempt to frisk) has always been part of Doornbos's Fourth Amendment excessive force claim. Only three issues remain on for a jury to decide: (1) whether Defendant Officers Yakes and Capiak are also liable for violating Doornbos's Fourth Amendment rights (either directly or for failure to intervene), (2) the liability of all three Defendant Officers on the malicious prosecution claim, and (3) what amount of damages will fairly compensate Doornbos for his injuries.

This civil rights lawsuit arises out of Doornbos's arrest by Defendant Chicago Police Officers Williamson, Yakes, and Capiak at approximately 7:30 p.m. on February 15, 2013 outside the Wilson Avenue CTA train station in Chicago. Williamson, who was undercover and dressed in civilian clothes, approached Doornbos as he was exiting the station and grabbed his jacket pocket in

an attempt to frisk him. Doornbos, not realizing that Williamson was a police officer and thinking that he was being robbed, began shouting for help and attempted to run away. He took two or three steps before all three Officers tackled him to the sidewalk, injuring his head and hands. The Officers charged Doornbos with resisting arrest and he was acquitted after a bench trial. He then filed this lawsuit under 42 U.S.C. §1983, alleging a federal excessive force claim and an Illinois state law malicious prosecution claim. This case proceeded to a jury trial before this Court in March of 2016, and on March 17, 2016, the jury returned a verdict in favor of Defendants on all counts. Doornbos appealed the verdict.

On August 18, 2017, the Seventh Circuit vacated the jury's verdict and remanded this case for a new trial. The Seventh Circuit found that it was reversible error to give Defendants' "investigatory stop" instruction because the instruction did not also explain when frisks are legally justified under *Terry v. Ohio*. *Doornbos v. City of Chicago*, 868 F.3d 572, 581 (7th Cir. 2017). The Seventh Circuit also found it was error for the Court to answer a jury question by informing the jury that plainclothes police officers are not required to identify themselves before conducting a *Terry* stop. *Id.* at 575. In reaching its decision, the Seventh Circuit made specific findings that are now the law of this case: (1) Williamson "was starting a frisk when he first approached Doornbos" and (2) Williamson's frisk of Doornbos was illegal. *Id.* at 575, 583. Defendants petitioned for rehearing by the panel or *en banc*, but the Seventh Circuit denied their petition on November 1, 2017 and remanded the case to this Court for a new trial. A second jury trial is currently set to begin on August 27, 2018. As a result of the Seventh Circuit's ruling that the frisk was unlawful, Doornbos seeks judgment as a matter of law on his Fourth Amendment claim as to Defendant Williamson.

## ARGUMENT

Doornbos has always claimed that Williamson had no legal justification for grabbing his jacket outside the Wilson CTA stop, and the Seventh Circuit agrees. The Seventh Circuit has

determined that Williamson's reasons for frisking Doornbos did not amount to a reasonable suspicion that Doornbos was armed and dangerous; thus, the frisk of Doornbos was illegal under the Fourth Amendment. *Id.* at 581-83. That ruling is the law of the case, and the jury cannot now return a verdict of "not liable" on Doornbos's Fourth Amendment claim against Williamson. Thus, this Court should enter judgment as a matter of law that Williamson's frisk of Doornbos was illegal and violated the Fourth Amendment. This case should then proceed to a trial to determine whether the other two Defendant Officers also acted unreasonably and Doornbos's damages for the violation of his Fourth Amendment rights, as well as liability and damages on Doornbos's state law malicious prosecution claim. While the Court could enter judgment as a matter of law under Rule 50 or Rule 56 – the standard is the same under either Rule – Doornbos submits that judgment under Rule 50 is the most efficient procedure at this stage of the case and the requirements for it have been fulfilled. Such a judgment will resolve Doornbos's Fourth Amendment claim as against Williamson, prevent a verdict that would be inconsistent with the Seventh Circuit's rulings, and will narrow the issues for the jury at trial.

## I. The Seventh Circuit's rulings with respect to Williamson's frisk of Doornbos are the law of this case.

The Seventh Circuit concluded that Williamson's frisk of Doornbos was unlawful under the Fourth Amendment because Williamson had no reason to think that Doornbos was armed and dangerous. That conclusion is now the law of this case and it binds all future proceedings, including the second trial before this Court. The law of the case doctrine holds that "once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Zamora-Mallari v. Muksaey*, 514 F.3d 679, 697 (7th Cir. 2008) (quoting *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991)). "Accordingly, 'when a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any

3

subsequent appeal.'" *United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998) (quoting *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995)). The rule promotes the finality and efficiency of the judicial process by "protecting against the agitation of settled issues." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (internal citation omitted). The law of the case doctrine applies to trial issues. *See Creek v. Village of Westhaven*, 1996 WL 657794, at *1-2 (N.D. Ill. Nov. 1, 1996) (explaining that the Seventh Circuit's ruling on the measure of damages was binding on the district court during the trial on remand).

The Seventh Circuit made two specific rulings that are now the law of this case. First, the Seventh Circuit concluded that Williamson was conducting a frisk of Doornbos. At trial, Williamson admitted that he was trying to touch Doornbos's pocket to see whether he had a weapon and "that he had already decided to conduct a frisk when he approached Doornbos." *Doornbos*, 868 F.3d at 588. Thus, the Seventh Circuit concluded that "Williamson's own testimony indicates that he was starting a frisk when he first approached Doornbos." *Id.* at 575 ("Based on Officer Williamson's own version of events, he grabbed Doornbos to frisk him."); *Id.* at 585 ("Williamson initiated the search by reaching out with his hand and putting Doornbos in imminent apprehension of an offensive contact.") (internal quotations and citations omitted). The Seventh Circuit, accepting the testimony of Williamson, found that Williamson was conducting a frisk when he first approached Doornbos. Defendants cannot now deny this fact.

Second, the Seventh Circuit concluded that "the frisk was unjustified and thus unconstitutional" because Williamson did not have "articulable facts that would establish the separate and specific condition that the detainee has a weapon or poses some danger." *Id.* at 581 (quoting *United States v. Williams*, 731 F.3d 678, 686 (7th Cir. 2013)). This conclusion is critical to the Seventh Circuit's holding and the Seventh Circuit reiterated it multiple times throughout its opinion. The court explained that the frisk was unlawful because Williamson "did not have reasonable

4

suspicion that Doornbos was armed and dangerous." *Id.* at 586. Furthermore, that conclusion is undisputed because "*both sides*' accounts suggest that Officer Williamson's initial contact with Doornbos was unreasonable and unlawful." *Id.* at 588 (emphasis added). Thus, the court concluded, "Doornbos was entitled to have the jury know that the attempted frisk…was unjustified." *Id.* at 575. The Seventh Circuit's ruling on this issue is clear: Williamson's frisk (or attempted frisk) was unlawful. That conclusion is now the law of this case. This Court is obligated to follow it, and whatever decision the jury makes in the second trial must be consistent with it.

**II. Doornbos is entitled to judgment as a matter of law on his Fourth Amendment claim as against Williamson.**

This Court should enter judgment as a matter of law that Williamson's frisk (or attempted frisk) of Doornbos was unlawful. Doing so will resolve Williamson's liability with respect to Doornbos's Fourth Amendment claim, and then only the liability of the other Officers and Doornbos's damages will remain for the jury to decide. Williamson's grabbing of Doornbos (or his show of force in attempting to grab Doornbos) has always been part of Doornbos's excessive force allegations against Williamson and the Seventh Circuit has already found Williamson liable for those actions. Williamson's own testimony warrants judgment as a matter of law, and because the unlawfulness of his frisk of Doornbos is now the law of the case, Williamson cannot contradict or add to his reasons for frisking Doornbos in response to this motion or at the second trial. Thus, Plaintiff is entitled to judgment as a matter of law on his Fourth Amendment claim against Williamson.

**A. Williamson has already been found liable on Doornbos's Fourth Amendment claim.**

Doornbos brought one federal section 1983 claim for the violation of his Fourth Amendment rights. As explained above, the Seventh Circuit has already ruled that Williamson committed a Fourth Amendment violation when he grabbed Doornbos's jacket (or attempted to) without having a reasonable suspicion that he was armed and dangerous. Doornbos does not have

5

to prove that Williamson's decision to tackle Doornbos to the sidewalk was *also* a violation of his Fourth Amendment rights. Doornbos has already prevailed against Williamson – he brought a Fourth Amendment claim and the Seventh Circuit found that Williamson committed a Fourth Amendment violation. Plaintiff need not prove any further Fourth Amendment violation by Williamson. As to Williamson and the federal claim, only damages remain.

Doornbos recognizes that he did not title his Fourth Amendment claim "Unlawful Frisk," but that does not matter. Doornbos's complaint explicitly alleged that Williamson's initial grabbing of his jacket was part of his Fourth Amendment claim. *See First Amended Complaint*, Dkt. 25, at ¶¶9-11 ("As soon as Plaintiff left the CTA station, Defendant OFFICERS grabbed Plaintiff and threw him to the ground. Defendant OFFICERS were dressed in civilian clothes, and not wearing police uniforms."). The unlawful frisk or attempt to frisk has always been part of Doornbos's Fourth Amendment claim and the facts and evidence surrounding the initiation of this encounter were explored in depth during discovery and at trial. Defendants cannot now be heard to complain that they were somehow surprised that the initial grab was part of Doornbos's claim against Williamson. Doornbos has always maintained that Williamson had no legal justification to put his hands upon him in the first place. The Seventh Circuit agrees.

Second, regardless of whether one calls Williamson's grabbing of Doornbos's jacket a frisk or a use of force, the same Fourth Amendment reasonableness standard applies. *Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir. 2006) ("both inquiries – whether a search is constitution and whether the officer has used excessive force – involve an evaluation of the 'reasonableness' standard of an officer's conduct under a particular set of facts and circumstances") (internal citations omitted). The point is that "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Rooni v. Biser*, 742 F.3d at 741; *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 731 (7th Cir. 2013); *Barid v. Renbarger*, 576 F.3d 340, 345 (7th Cir.

2009); *Chelios v. Heavener*, 520 F.3d 678, 691-92 (7th Cir. 2008); *Payne v. Pauley*, 337 F.3d 767, 780 (7th Cir. 2003); *Clash v. Beatty*, 77 F.3d 1045, 1048. Physically grabbing a citizen, or even just attempting to do so, is a use of force. In this case it was also a frisk, based on Williamson's own testimony. The Seventh Circuit specifically ruled that "Doornbos was entitled to have the jury know that the attempted frisk, which even the defense says produced the use of force, was unjustified." *Doornbos*, 868 F.3d at 575. This Court should enter judgment as a matter of law in Doornbos's favor on his Fourth Amendment claim against Williamson.

**B. Williamson's testimony warrants judgment as a matter of law and he cannot contradict it in response to this motion or at the second trial.**

In addition to the law of the case doctrine, Williamson's testimony from the first trial of this lawsuit also provides an independent basis for judgment as a matter of law on Doornbos's Fourth Amendment claim. To proceed from a stop to a frisk, the officer in question "must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). There is no dispute about Williamson's bases for frisking Doornbos outside the Wilson CTA stop and it is clear that they do not amount to a reasonable suspicion that he was armed and dangerous. Williamson has now testified multiple times to his reasons for frisking Doornbos:

- At his deposition, Williamson admitted that there was "nothing specific" about Doornbos that made him think Doornbos was armed, but that he decided to conduct a pat-down search because he thought Doornbos was "breaking the law" by carrying open alcohol (even though Williamson admitted he could not tell whether the alleged beer can was open or closed). *Williamson Deposition Transcript Excerpts*, attached as **Exhibit A**, at 43:23-45:10.

- At trial, Williamson claimed that the Wilson CTA stop is "a very high-crime area" and that "there is a lot of crime in the Uptown area." *Trial Transcript Excerpts ("Trial Tr.")*, attached as **Exhibit B**, at 337:8-21.

- Williamson also mentioned at trial that "[it was] dark out" as a reason for thinking that Doornbos was armed. *Trial Tr.*, Ex. B, at 337:8-12.

7

- Williamson said that Doornbos "had a jacket that had deep pockets. He could have hidden anything in there." *Trial Tr.*, Ex. B, at 337:8-16.

- Williamson claimed that this was "an officer safety issue." *Trial Tr.*, Ex. B, at 337:8-338:11, 383:5-6. It should be noted that the Seventh Circuit has specifically rejected generalized "officer safety" as a justification for pat-down searches. *Gentry v. Sevier*, 597 F.3d 838, 847 (7th Cir. 2010) ("While we recognize that officer safety is important, under the law, officers are not free to pat down citizens at will. A law enforcement officer can conduct a protective pat-down search during a *Terry* stop only if the officer has at a minimum some articulable suspicion that the subject is concealing a weapon or poses a danger to the officers or others.").

The Seventh Circuit accurately summarized Williamson's testimony regarding his reasons for frisking Doornbos as follows: "[I]t was a high-crime area, it was dark, Doornbos may have been breaking the law by drinking beer, and Doornbos was wearing a jacket with 'deep pockets' in which he 'could have hidden anything.'" *Doornbos*, 868 F.3d at 581.

Williamson cannot now contradict or add to these reasons in order to avoid judgment as a matter of law. *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2016) (one who has already testified cannot claim to have merely suffered an "occasional lapse[ ] of memory" in testifying or to need to clarify or correct his testimony when he has already had multiple opportunities to do so.); *Abraham v. Wash. Grp. Int'l, Inc.*, 766 F.3d 735, 741 (7th Cir. 2014) ("[A] deponent may not use an affidavit sworn to after a deposition to contradict deposition testimony without giving credible explanation for the discrepancies."); *Janky v. Lake County Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009) ("litigants cannot create sham issues of fact with affidavits that contradict their prior depositions").

As the Seventh Circuit has found, the evidence does not support a reasonable suspicion that Doornbos was armed and dangerous. Williamson has already been questioned multiple times on that issue, including by his own counsel at trial. The record is devoid of any evidence that Doornbos appeared to be armed when Williamson went to frisk him outside the Wilson CTA stop. This Court cannot allow Williamson to add more reasons for frisking Doornbos that he did not mention before

8

as this would be contrary to the law of the case as handed down by the Seventh Circuit. Thus, Plaintiff is entitled to judgment as a matter of law that Williamson's frisk of him was unlawful.

### III. Rule 50 is the most efficient means of recognizing the Seventh Circuit's rulings and granting judgment as a matter of law on the unlawful frisk.

There is little case law on the appropriate means for granting judgment as a matter of law on remand in response to rulings by an appellate court. Plaintiff's counsel submits that Rule 50 is the most efficient mechanism to grant judgment as a matter of law at this stage in the proceedings. Doornbos has styled this as a Rule 50 motion for judgment as a matter of law to avoid the expense and time of briefing summary judgment.[1] However, this Court can enter judgment as a matter of law under either Federal Rule of Civil Procedure 50 or 56, and could also treat this motion as a motion *in limine*. The standard for granting judgment as a matter of law is the same under all three options. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) ("[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that the inquiry under each is the same'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986)). "If reasonable persons could not find that the evidence justifies a decision for a party on each essential element, the court should grant judgment as a matter of law – before trial under Rule 56, later under Rule 50, and use the same federal standard each time." *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341 (7th Cir. 1995).

Rule 50(a) provides as follows:

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to

---

[1] This Court could elect to treat this motion as a Rule 56 motion for summary judgment. However, Plaintiff submits that this Court need not do so and can instead rule on this motion as a matter of law either under Rule 50 or *in limine*.

9

> a…defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
>
> (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to judgment. Fed. R. Civ. P. 50(a)

Doornbos has met the threshold requirements for judgment as a matter of law on his Fourth Amendment claim against Williamson. Williamson has been fully heard on his proffered justifications for frisking Doornbos during the first jury trial in March 2016. Doornbos has filed this motion prior to the submission of this case to the jury in the second trial. The issue of Williamson's liability on the Fourth Amendment claim has been established and the jury must not deliberate as to Williamson's liability on the federal claims lest they issue a verdict contrary to the Seventh Circuit's ruling. Thus, Doornbos is entitled to judgment as a matter of law on his Fourth Amendment claim as to Williamson.

**WHEREAS,** Doornbos respectfully requests that this Court enter judgment as a matter of law on his Fourth Amendment claim as to Williamson. The issues remaining for trial will be:

1) Liability of Yakes and Capiak on the Excessive Force Claim (either directly or for failure to intervene);

2) Liability of all three Defendant Officers on the malicious prosecution claim; and

3) Damages.

Respectfully submitted,

/s Kevin T. Turkcan
One of Plaintiff's Attorneys

/s Torreya L. Hamilton
One of Plaintiff's Attorneys

HAMILTON LAW OFFICE, LLC
53 West Jackson Blvd., Suite 452
Chicago, Illinois 60604
312.726.3173